To Clerk of Court
United States District Court
Middle District of Louisiana

RECEIVED
JUN 26 2023
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
DEPUTY CLERK

From PROSE Counsel
RANDY MICHAEL PEREZ Doc# 622172
6925 Highway 74 P.O Box 174
Saint Gabriel, LA 70776-0000

RE: Civil Rights Violation: Corrections agency acted with "Deliberate indifference" in violation of my 14th, 5th, 1st, 8th Amendment Rights with overdetention of a full one [1] year detention and is still holding even with a Court order to set me free!! The Dorms have no AC to give fresh air and the Dorm where RANDY Michael Perez stays on Unit one Fox 1 mental health dorm the vents have been broke sense 2019. The apparent temperature [heat index] outdoors has exceeded more than 88 degrees Fahrenheit, requiring special provisions!! The apparent temperature [heat index] indoors has exceeded more than 130 degrees Fahrenheit requiring special provisions!! I have medical reasons such as ADD, ADHD, Anxiety, Stress, Back Pain, Depression, pain, Inflammation, post-traumatic stress disorder and is in imminent danger of serious physical injury because of a heat stroke with the chance of getting medical problems and a Disease because the Dorms which the Department of Corrections Elyan Hunt Correctional Center have the full control of!!
- Want a Jury in this matter!! $100 million - Overdetention

Brief Complaint -
Organization - The Louisiana Department of Public Safety Corrections Corrections Services [also referred to as "DOC"] is responsible for housing prisoners convicted of a felony and sentenced to the custody and care of the DOC. The DOC is also responsible for supervising persons convicted of a felony and sentenced directly to probation or those who release from felony imprisonment onto Parole.

(1)

The Secretary James M. LeBlanc, who is appointed by the Governor, serves as the Department's chief executive officer. He oversees the DOC's two main components:

① Institutions or correctional facilities, which is where prisoners are housed, and

② Probation/Parole, which provides supervision of individuals outside of correctional facilities.

I have been kidnap - 18 U.S.C.A. § 242
§ 242. Deprivation of rights under color of law
Title 18. Crimes and criminal procedure

| | |
|---|---|
| RANDY MICHAEL PEREZ | NUMBER: 694.350 SECTION: 21 |
| # 622112 | 19TH JUDICIAL DISTRICT COURT |
| | PARISH OF EAST BATON ROUGE |
| VERSUS | STATE OF LOUISIANA |
| LA DEPT OF PUBLIC SAFETY CORRECTIONS, ET AL | |

## JUDGMENT

This matter came for ruling before this court in accordance with LSA-R.S. 15:1177, et seq, with oral arguments having been held between the parties on June 1, 2023. IT IS ORDERED, ADJUDGED AND DECREED that the legislature intended the version of La. Code of Criminal Procedure art. 900 in effect November 1, 20 through July 31, 2018, to be retroactive in nature pursuant LA. Civil Code art. 6. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the above-referenced version of La.C.Cr.P.arts is therefore applicable to Petitioner's July 31, 2016 Probation Revocation. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Petitioner is therefore entitled to four [4] years of street credit toward his probation revocation for the time

Pg ②

James M. LeBlanc and Jonathan R. Vining [#30787] General Counsel LA Department of Public Safety Corrections which the Corrections agency acted with "deliberate indifference" in violation and continue to deprive me of my 14th, 5th, 1st, 8th Amendment Rights with over detention of a full one [1] year detention and is still holding even with a court order to set me free!! I have been kidnap from my fam and the United States and the world with overdetention and there actions have violated 18 U.S.C.A. §242 = 242 Deprivation of Rights under color of law with kidna

The LA Dept of Public Safety Corrections is a corrupt organization under Title 18. Crimes and criminal procedure under chapter 96. Racketeer Influenced and corrupt organizations under 18 U.S.C. § 1961. § 1961. Definitions [1] "racketeering activity" means [A] any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter which is chargeable under state law and punishable by imprisonment for more than one year; [B] any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 [relating to bribery] Section 1344 [relating to financial institution fraud], Section 1503 [relating to obstruction of justice] Section 1511 [relating to the obstruction of state or local law enforcement, Sections 1581-1592 [relating to peonage, slavery, and trafficking in persons!!

The Advocate Thursday, January 26, 2023
Feds rule La. overdetention unconstitutional
State routinely holds inmates past release dates
By Jacqueline DeRobertis
Staff Writer
Louisiana Department of Public Safety and Corrections regularly violates the U.S. Constitution by holding people in custody beyond

Pg ④

their release dates, officials with the U.S. Department of Just[ice] found during a two-year investigation. For a time last year, m[ore] than 1 out of every 4 inmates released had been held too long and the average length of their overdetention was 29 days, the Justice Department said Wednesday Jan 25, 2023 as it noted routine violati[ons] of the 14th Amendment. The DoJ began investigating the Louisian[a] agency in December 2020. According to the Justice Department, the St[ate] corrections agency denies people their due process rights to a timely release; has failed to implement "adequate policies and procedures that lead to "systemic overdetentions," and is "deliberately indiffe[rent] to such overdetentions." For more than 10 years, LDOC has been on notice of its overdetention problem and has failed to take adequate measures to ensure timely releases of incarcerated individuals [in] its custody," the announcement said. The investigators noted that, between January and April last year, 26.8% of those completing their sentences were held past their scheduled release dates. Of that gro[up] 24% were held for at least 90 days more. The median length of overdetention was just under a month, the investigators said. The agency had to pay local jails an estimated $850,000 in fees for th[e] days people were overdetained in that four-month period. "At th[is] rate, this unconstitutional practice costs Louisiana over $2.5 million a year," DoJ officials said. The Department of Just[ice] gave the findings to the state agency and notified it of "the minimum remedial measures necessary to address them." The Constitution guarantees that people incarcerated in jails and prisons may not be detained beyond their release dates, and it is th[e] fundamental duty of the state to ensure that all people in its custody are released on time," said Assistant Attorney General Kristen Clarke, of the DoJ's Civil Rights division. "We are comm[itted] to taking action that will ensure that the civil rights of people held in Louisiana's jails and prisons are protected. We stand ready to wo[rk] with state officials to institute long overdue reforms." Ken Pastorick a spokesperson for the state agency, said in a statement that officia[ls] are reviewing the report. "Without a full review of the report's findin[gs]

pg ⑤

and documentation supporting said findings, it would be a challenge to provide a comprehensive response at this time," he said. "The Department of Corrections has been cooperative for the entire duration of the investigation, and we will continue to w with DoJ throughout this process." William Most, an attorney who represents people individually and in two lawsuits seeking class-action status claiming overdetention violations in Louisiana, said releasing people on time "is a legal and a moral obligation." "Justice demands a complete and immediate over-haul of the entire system," he said, "It's long overdue." State auditor's have for years, sounded the alarm about overdetention. A 2019 state legislative audit reported that Louisiana's prisons failed to properly track inmate release dates. Auditor's found an inadequate review process of sentencing calculations that they said led to errors determining inmates' "good-time" status, parole eligibility and rehabilitation program credits --- all factors in deciding these dates. A similar state audit in 2017 also raised concerns, criticizing the department's lack of consistent policies for release date calculations. Court filings released in 2020 revealed that corrections officials knew as early as 2012 that the system for calculating release dates is flawed. Agency Secretary James M. LeBlanc acknowledged in a May 2019 deposition that delayed and inaccurate sentence computations were a "big problem" for the agency. In December 2019, LeBlanc told a legislative committee that the time calculation process involves an antiquated system to transfer paper work from one agency to another, often requiring records to be physically driven across the state for hand delivery. And with many of Louisiana's inmates housed in local jails in addition to state prisons, state officials must rely on parish-by-parish cooperation. Federal officials referenced in their report the limitations of the outdated Criminal and Justice Unified Network, which has been used by the state agency to process time computations and calculate release dates since 1991. Even amid a del

Pg (5)

modernization project for the agency's custody records, the DOJ report says an update will not rectify the fundamental issues contributing to the problem of overdetention!! For example a 55-year old man said he was held 95 days past his official release date after a conviction for stabbing a man during a fight Algiers. Keith Bryant filed his lawsuit in 2019. Mercedes Montagne executive director of the Promise of Justice Initiative, an organizat seeking to change the criminal legal system, said the findings were "even worse than we could have imagined", we are hopeful that will finally take its Constitutional obligations seriously," Montaynes said. Casey Denson, an attorney who has worked on individual claims from inmates held past their release dates, said years of challenges to the system haven't worke "We hope the Department of Justice is able to help the Stat of Louisiana fix this problem, as it is clear that the State is unwilling, and unable, to fix it on its own", Denson said.

If State does not correct overdetention issue, feds may step in
La Prisons have been holding inmates past release dates
By Jacqueline De Robertis, Staff Writer
When the federal government announced last week that Louisiana's Pr System has been regularly violating the Constitution by holding inmates past their release dates - at one point affecting more than 1 out of every 4 people released -, it was not exposing a new issue. As far back as 20 "Lean six sigma" review of the inmate time calculation process found that overdetention was a serious issue, JAMES M LEBLANC Secretary of the State Department of Public Safety and Corrections, acknowledged in 20 court filings. The 2012 review found the department was overdeta 2,252 inmates per year for an average 72 extra days each. In 201 Louisiana legislative auditor released a report detailing concerns about the way the department calculates inmate time. Then, in the auditor put out a second, similar report, this time declaring t department failed to properly track inmate release dates.

pg ①

For years, the department has contended with internal reviews, legislative audits and a battery of lawsuits claiming overdetention is rampant in Louisiana's corrections system. Now the U.S. Department of Justice is stepping in after a two year investigation threatening legal action if the state corrections agency doesn't fix the problem. To start, the feds included in their report a list of the bare minimum remedial measures the department must to take to avoid legal action. A spokesperson for the state agency did not return a request for comment. "This isn't rocket science. Every other state - at least most of them - has a system that works," said Maybell Romero, the Felder-Fayard associate professor of law at Tulane University. "You are looking at a sliver of reform here. We're not looking at a consent decree that says, 'fix your whole criminal legal system'." A history of "indifference"

To make this case that the corrections agency acted with "deliberate indifference and their case showed there were violation of inmates" 14th Amendment rights Department of Justice officials laid out a time line in their lengthy report illustrating just how long the state has known about the overdetention prob and how little it has done to substantively address it. Corrections officials knew since at least 2012 that there were challenges with calculating release dates and addressing overdetention. The revelations of that lean si sigma review, part of an effort to audit the time computation process, paint a troubling picture of ongoing calculation delays that ultimately caused in correct release dates." It took, on average, 110 days from the date of an individual's conviction for LDOC staff to process and complete a person's time computation

Pro Se Counsel
Randy Michael Pere        June 19th 2023

Pg (8)

From RAndy michael Perez
Doc# G38112
6925 Highway 74
P.O Box 174
Saint Gabriel, LA 90776





To Clerk of Court
United States District Court
Middle District of Louisiana
777 Florida Street, Suite 139
Baton Rouge, LA 70801-1713